**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 05-355-C**

**GENERAL ELECTRIC CAPITAL CORPORATION,**                                         **PLAINTIFF,**

**V.**                                 **MEMORANDUM OPINION AND ORDER**

**FRED L. KASEY, III, ET AL.,**                                                  **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the plaintiff's motion for summary judgment (DE 27).  The court, having reviewed the record and being otherwise advised, will grant the motion.

**I.      BACKGROUND**

This matter arises out of the alleged default by non-party FRK Enterprises, Inc. ("FRK"), on a lease agreement for commercial equipment with the plaintiff, General Electric Capital Corporation ("GE Capital").  According to GE Capital, FRK defaulted on the lease by failing to make a scheduled rent payment.  GE Capital also claims that the defendants Fred L. Kasey, Jr., Keith D. Kasey, and Fred L. Kasey, III, agreed to guarantee FRK's debts to GE Capital in order to induce GE Capital to enter into the lease with FRK.  When the defendants failed to honor their alleged guarantees, GE Capital filed suit, seeking to recover the full amount of the debt from the defendants.[1]  GE Capital filed the motion for summary judgment

---

[1] After his death, defendant Fred L. Kasey, Jr., was replaced by his estate, see DE 25, and Keith D. Kasey was dismissed from this action by stipulation of the

currently before the court on July 17, 2006, seeking recovery of "$344,742.43,

plus attorney's fees and costs."[2]  (DE 27-1 at 2.)

On August 2, 2006, the defendants' counsel filed a motion to withdraw

(DE 31), alleging that the remaining defendants had instructed him not to take any

further action in this case.  The court held a telephonic hearing on the motion to

withdraw on November 17, 2006, and on November 20, 2006, the court issued an

order granting the motion (DE 36).  The court also granted the defendants thirty

(30) days to have new counsel enter an appearance on their behalf.  Finally, the

court also granted the defendants thirty (30) days "to notify the court whether they

intend to respond to the . . . motion for summary judgment[,]" but further warned:

"If no such notice of intent is filed, and/or if no response to the aforesaid motion is

filed, the court will resolve the dispositive motion without such a response."

(DE 36 at 1.)

Despite this order, the defendants have not responded to the motion for

---

parties after he filed for bankruptcy, see DE 29.

Therefore, the current defendants are Fred L. Kasey, III, and Bernice Kasey, in her role as administrator of the estate of Fred L. Kasey, Jr.

[2]  According to GE Capital, under the terms of the Lease Agreement, FRK was obligated to pay all rents payable during the remainder of the term, discounted to present value (using an agreed-upon present value rate), plus the estimated fair market value of the equipment covered by the lease, less the proceeds recovered by GE Capital upon disposition of any repossessed equipment.  *See* DE 27-2 at 13.

GE Capital also argues that it is entitled to its attorney's fees and costs because the defendants also "guarantee[d] to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of [FRK's] default . . . or default of the undersigned under this Guaranty."  (DE 1, Exs. D-F at 1.)

summary judgment, nor have they filed a notice of their intent to do so.  Indeed, there has been no activity in this case since the entry of the court's last order on November 20, 2006.  Therefore, the court will address the substance of the plaintiff's motion for summary judgment without a response from the defendants.

## II.      STANDARD OF REVIEW

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff. *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

The initial burden of showing the absence of a genuine issue of material fact is on the moving party.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).  Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 249 (internal citations omitted).  Furthermore, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only 'show – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325).

## III.   ANALYSIS

In their answer to GE Capital's complaint, the defendants admit "that there is some amount due and owing by FRK to GE[,]" although they claim to be "without sufficient information to enable them to admit or deny" the amount of the debt claimed by GE Capital.  (DE 11 at 3.)  The defendants also admit that they did "sign and deliver to GE a personal guaranty with respect to the equipment lease agreement entered into by FRK with GE"; however, they claim to be "without information sufficient to enable [them] to admit or deny" that GE Capital's exhibits are "true and correct cop[ies] of the actual guarant[ies,]" and therefore, they conclude that they are "without sufficient information . . . to admit or deny . . . liability for any particular sum of money under . . . [the] guarant[ies] . . . ." *Id.*

GE Capital argues that these statements amount to admissions that obviate

the need for further proof. Nevertheless, GE Capital has provided evidence to support its claims in the form of exhibits, submitted along with its complaint, which purport to be copies of the guaranties provided by the defendants to GE Capital. In addition, along with its motion for summary judgment, GE Capital has also provided an affidavit from Stanley Zurbin, a recovery manager with GE Capital, which also supports the claims made in the complaint and the motion for summary judgment. Based on "the strength and quality of this evidence," GE Capital concludes that it is entitled to summary judgment because "no triable issue of material fact exists." (DE 27-2 at 15.)

Exhibit A to the complaint, which GE Capital claims is a copy of its lease with FRK, stipulates that "the rights and obligations of the parties hereunder shall in all respects be governed by and construed in accordance with" the "laws of the state of Connecticut . . . including all matters of construction, validity and performance, regardless of the location of the equipment." (DE 1, Ex. A at 8.) Connecticut courts have held that "'where the terms of a writing are plain and unambiguous,'" a contract "'is to be given effect according to its language.'" *Gateway Co. v. DiNoia*, 654 A.2d 342, 347 (Conn. 1995) (quoting *Water & Way Properties v. Colt's Mfg. Co.*, 646 A.2d 143 (Conn. 1994)). Ordinarily, questions of contractual intent present questions of fact, but when contractual language "'is clear and unambiguous'" questions of contractual intent become "'question[s] of law for the court.'" *Gateway*, 654 A.2d at 347 (quoting *Water & Way Properties*,

646 A.2d 143).  The alleged lease clearly states that the "Lessor may in writing declare this Agreement in default if: (i) Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days[,]" see DE 1, Ex. A at 5, and indeed, the defendants admit "that there is some amount due and owing to GE by FRK under the terms of the lease agreement[,]" see DE 11 at 3.  Therefore, even when the available facts are viewed in the light most favorable to the defendants, GE Capital has shown that no genuine issue of material fact exists as to FRK's default.

According to Connecticut's general remedies statute, "[u]nless the lease contract provides for liquidated damages enforceable under section 42a-2A-710 . . . an aggrieved party may not recover that part of a loss resulting from a default that could have been avoided by reasonable measures under the circumstances." Conn. Gen. Stat. Ann. § 42a-2A-704.  But in this case, the alleged lease contains a liquidated damages provision, which states that "[a]fter a default, at the request of Lessor, . . . Lessee shall immediately pay to Lessor without further demand as liquidated damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment . . . and all rents and other sums then due under this Agreement and all Schedules."  (DE 1, Ex. A. at 5.)  Therefore, Connecticut's liquidated damages statute, rather than the general remedies statute, applies.[3]

---

[3]  In any event, under Connecticut's general remedies statute,"[t]he burden of establishing that reasonable measures under the circumstances were not taken is on the defaulting party."  Conn. Gen. Stat. Ann. 42a-2A-704.

Therefore, even under Connecticut's general remedies statute applied, the

Under Connecticut's liquidated damages statute, "[d]amages for default or any other act or omission . . . may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of either the actual loss or the then anticipated loss caused by the default or other act or omission."  Conn. Gen. Stat. Ann. § 42a-2A-710.  More specifically, Connecticut courts have upheld liquidated damages as reasonable when they satisfy three conditions:

> "(1) The damage which was to be expected as a result of the breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained . . . in the event of a breach of contract."

*American Car Rental, Inc. v. Comm'r of Consumer Protection*, 869 A.2d 1198, 1206 (Conn. 2005) (quoting *Berger v. Shanahan*, 118 A.2d 311 (Conn. 1955)). The liquidated damages provision at issue satisfies all three conditions: first, the provision's formula for damages indicates that the parties expected that the damage caused by any breach would be uncertain or difficult to prove; second, the clear language of the provision reveals the parties' intent to liquidate damages in advance; and third, the amount of damages stipulated is not greatly disproportionate to the presumable potential loss caused by a breach – essentially, it only provides GE Capital with the payments it would have received had FRK not

---

defendants have failed to meet their burden of establishing such a mitigation argument.

defaulted on the lease.

Moreover, "[a] breaching party seeking to nullify a contract clause that fixes

an amount as damages for the breach bears the burden of proving that the agreed

upon amount so far exceeds any actual damages as to be in the nature of a

penalty." *American Car Rental*, 869 A.2d at1210 (citing *Vines v. Orchard Hills,*

*Inc.*, 435 A.2d 1022 (Conn. 1980)).  Because the defendants have not responded

to the motion for summary judgment, they have failed to present any evidence or

arguments to show that the damages sought by GE Capital are an unreasonable

penalty.  Therefore, even when the available facts are viewed in the light most

favorable to the defendants, GE Capital has shown that no genuine issue of

material fact exists as to the damages owed by FRK to GE Capital for its default.

Unlike the alleged lease between GE Capital and FRK, the alleged guaranties

between GE Capital and the defendants at issue in this case do not contain a

choice-of-law provision.  Therefore, the court will consider these "Kentucky

Individual Guarant[ies]" under Kentucky law.  Each guaranty states that it "is given

to induce [GE Capital] to enter into a certain lease transaction ("Lease") with FRK

Enterprises, Inc., . . . ."  (DE 1, Exs. D-F, at 1.)  In these documents, the

defendants, "[f]or good and valuable consideration . . . guarantee" to GE Capital

and its "successors and assigns, the due regular and punctual payment of any sum

or sums which [FRK] may owe to you [under the Lease and its related

documents]. . . whether it represents principal, interest, late charges, . . . liquidated

8

damages, . . . or any other type of sum of any kind whatsoever . . . ." *Id.*

Under Kentucky Revised Statute § 371.065(1), "[n]o guaranty of an

indebtedness which either is not written on, or does not expressly refer to, the

instrument or instruments being guaranteed shall be valid or enforceable[,]" unless

it "contains provisions specifying the amount of the maximum aggregate liability of

the guarantor thereunder, and the date on which the guaranty terminates."  This

statutory limitation does not bar GE Capital's attempt to enforce the guaranties at

issue in this case, however, because, as seen in the excerpts provided above, the

guaranties at issue expressly refer to the lease between FRK and GE Capital.  *See,*

*e.g.*, *Wheeler v. Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 614-15 (Ky.

2004) (holding that a guaranty "was not required to state either . . . maximum

liability or a termination date" so long as it satisfied the restrictive modifying clause

of Kentucky Revised Statute § 371.065(1)).

"[A] guaranty is generally classified as either conditional or unconditional."

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1449 (6th Cir. 1993).  In

general, "an absolute guaranty is a contract by which the guarantor promises that if

the debtor does not perform his obligation or obligations, the guarantor will perform

some act . . . to or for the benefit of the creditor, irrespective of any additional

contingencies." *APL, Inc. v. Ohio Valley Aluminum, Inc.*, 839 S.W.2d 571, 573

(Ky. Ct. App. 1992) (citing, inter alia, *Pulaski Stave Co. v. Miller's Creek Lumber*

*Co.*, 128 S.W. 96, 102 (Ky. 1910)); *see also Coffey*, 992 F.2d 1439, 1449 (6th

Cir. 1993) (relying upon the distinction between absolute and conditional guarantees provided by *Ohio Valley Aluminum*).  A guarantor can be held liable on an absolute guaranty from the moment that a creditor acts in reliance on the guaranty, even if the creditor fails to notify the guarantor of its acceptance of the guaranty.  *Ohio Valley Aluminum*, 839 S.W.2d at 573-76; *see also Bennett v. Bd. of Educ. of Harlan County*, 116 S.W.2d 302, 304 (Ky. 1938) (noting "the distinction between a conditional and an absolute guarantee[,]" and holding that under an absolute guarantee, "the guarantor is bound immediately upon the failure of the principal to perform his contract").  On the other hand, a "conditional guaranty . . . contemplates as a condition of the guarantor's liability the happening of some contingent event other than the default of the principal debtor, or the performance of some act on the part of the creditor."  *Ohio Valley Aluminum*, 839 S.W.2d at 573; *see also Coffey*, 992 F.2d at 1449 (same).

As seen in the excerpts provided above, the plain language of the guaranties at issue in this case indicates that they are absolute guaranties, which do not contemplate any additional contingency beyond FRK's default as a condition of the defendants' liability.  Although the guaranties appear to have been signed only by the defendants and a witness, the guaranties expressly state that they were given to induce GE Capital to enter into the lease with FRK.  As a result, the defendants became liable for FRK's defaults when GE Capital, acting in reliance on the

10

guaranties, signed the lease.[4]  Because the defendants have not responded to the motion for summary judgment, they have not provided this court with any evidence that GE Capital has distorted the text of the guaranties in its exhibits or misrepresented the circumstances surrounding their creation.  Therefore, even when the available facts are viewed in the light most favorable to the defendants, GE Capital has shown that no genuine issue of material fact exists as to the defendants' guarantees of FRK's debts to GE Capital under the lease.  Accordingly,

IT IS ORDERED that the plaintiff's motion for summary judgment (DE 11) is GRANTED.

IT IS FURTHER ORDERED that judgment shall be ENTERED in favor of the plaintiff in an amount not less than $344,722.43.


Signed on  January 18, 2007


Jennifer B. Coffman, Judge
United States District Court

---

[4]  All of the guaranties, as well as the lease, appear to have been signed on December 5, 2003.